UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BARRY SPENCER,
     Plaintiff,


     v.                         CIVIL ACTION NO.
                                  13-11528-MBB

CITY OF BOSTON, et. al.,
     Defendants.


### MEMORANDUM AND ORDER RE:
**DEFENDANT OMAR CEPEDA'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 93); DEFENDANT MARTIN KRAFT'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 95); DEFENDANT RODERICK LEWIS' PARTIAL MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 97); DEFENDANT ALEX MALDONADO'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 99); DEFENDANT SCOTT O'BRIEN'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 101); DEFENDANT SEAN SMITH'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 103); DEFENDANT PETER KING'S MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 105); DEFENDANT CITY OF BOSTON'S MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 107)**

### November 6, 2015

**BOWLER, U.S.M.J.**

Pending before this court is a motion for summary judgment filed by defendant City of Boston ("the City") pursuant to Fed.R.Civ.P. 56 ("Rule 56"). (Docket Entry # 107). Also pending before this court are partial motions for summary judgment filed by defendants Officer Omar Cepeda ("Cepeda"), Sergeant Martin Kraft ("Kraft"), Officer Roderick Lewis ("Lewis"), Officer Alex Maldonado ("Maldonado"), Officer Scott O'Brien ("O'Brien"), Sergeant Sean Smith ("Smith") and Detective

Lieutenant Peter King ("King") under Rule 56.  (Docket Entry ## 93, 95, 97, 99, 101, 103, 105).

PROCEDURAL BACKGROUND

Plaintiff Barry Spencer ("plaintiff") filed this civil rights action on June 19, 2013.  (Docket Entry # 1).  On June 18, 2014, plaintiff filed an amended complaint.  (Docket Entry # 36).  The amended complaint alleges the use of excessive force during an arrest, retaliation and the denial of medical care for the resulting injuries by various officers of the Boston Police Department.

On November 12, 2014, this court allowed the City's motion to dismiss as to the claims brought under 42 U.S.C. § 1983 ("section 1983"), the Massachusetts Civil Rights Act[1] and 42 U.S.C. § 1985(3) ("section 1985(3)").  In light of that order, the only remaining claim against the City pertains to plaintiff's allegations of "gross neglient, [sic] and criminal behavior of all defendants especially the City of Boston" in employing police officers of "violent character" and in failing to provide "adequate training, [and] supervision . . . in regards to retaliation behavior" in violation of the Massachusetts Tort Claims Act, Massachusetts General Laws chapter 258, section two ("the MTCA").  (Docket Entry # 36, ¶

---

[1]   Mass. Gen. Laws ch. 12, §§ 11H-J ("the MCRA").

43).

The amended complaint sets out a number of claims against Cepeda, Maldonado, O'Brien, Lewis, Smith, Kraft and King ("defendant officers").  (Docket Entry # 36).  Specifically, the amended complaint sets out a claim of failure to provide or inadequate medical care under section 1983 and the Declaration of Rights of the state constitution in violation of the MCRA[2] (Docket Entry # 36, ¶¶ 18, 22) as well as a conspiracy claim under section 1983 and/or section 1985(3).  (Docket Entry # 36, ¶ 13).[3]  Captioned as the second cause of action, the amended complaint sets out a claim of assault and battery and alleges that defendant officers "intentionally, willfully and maliciously assaulted Spencer."  (Docket Entry # 36, ¶ 28).  As set forth in the amended complaint, the third cause of action is a claim of excessive force by defendant officers who

---

[2]  Where, as here, a statutory vehicle exists under the MCRA to address the state law claim under the Declarations of Rights, there is no need to find a direct right of action under the Declaration of Rights.  See The Do Corp. v. Town of Stoughton, 2013 WL 6383035, at *13 (D.Mass. Dec. 6, 2013) (dismissing Declaration of Rights "claim" because it could have been brought under MCRA) (citing Grubba v. Bay State Abrasives, Div. of Dresser Indus., Inc., 803 F.2d 746, 748 (1st Cir. 1986)).  In light of plaintiff's pro se status, this court construes the Declarations of Rights "claim" (Docket Entry # 36, ¶¶ 18, 22) as an MCRA claim.

[3]  The amended complaint refers to a second, third, fourth, fifth and sixth cause of action, but fails to identify a first cause of action.  The above causes of action are taken from the paragraphs preceding the second cause of action.

"wrongfully, maliciously and unlawfully transformed lawful
police procedure and protocols into unlawful use of force after
arrest." (Docket Entry # 36, ¶ 31).  The fourth cause of action
is a false arrest claim alleging that defendant officers
"wrongfully, maliciously and unlawfully placed Spencer under
arrest." (Docket Entry # 36, ¶ 34).  Finally, the amended
complaint sets out a claim of malicious prosecution and alleges
that plaintiff was "wrongfully, unlawfully and maliciously
prosecuted" by defendant officers.  (Docket Entry # 36, ¶ 37).

     The City moves for summary judgment on the remaining
negligence claim against it.  (Docket Entry # 107).  The City
contends that it is immune from suit under Massachusetts General
Laws chapter 258, section 10(b) ("section 10(b)").  (Docket
Entry # 108, p. 6).  Alternatively, the City submits that
plaintiff has no standing to bring such a claim.  (Docket Entry
# 107).  Plaintiff opposes the motion and contends that genuine
issues of material fact preclude summary judgment.  (Docket
Entry # 112).

     Defendant officers concede that "a question of fact exists
as to whether an assault and battery took place or whether
excessive force was used." (Docket Entry ## 94, 96, 98, 100,
102, 104, 106).  Conversely, defendant officers seek summary
judgment on all other claims that remain against them under Rule
56.  (Docket Entry ## 93, 95, 97, 99, 101, 103, 105).  Plaintiff

opposes these motions and contends that genuine issues of material fact preclude summary judgment.  (Docket Entry # 112).

<u>STANDARD OF REVIEW</u>

Summary judgment is designed "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  <u>Tobin v. Federal Express Corp.</u>, 775 F.3d 448, 450 (1st Cir. 2014) (quoting <u>Wynne v. Tufts University School of Medicine</u>, 976 F.2d 791, 794 (1st Cir. 1992)).  It is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  It is inappropriate "if the record is sufficiently open-ended to permit a rational factfinder to resolve a material factual dispute in favor of either side."  <u>Pierce v. Cotuit Fire District</u>, 741 F.3d 295, 301 (1st Cir. 2014).

"Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'"  <u>Green Mountain Realty Corp. v. Leonard</u>, 750 F.3d 30, 38 (1st Cir. 2014) (quoting <u>Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London</u>, 637 F.3d 53, 56 (1st Cir. 2011)).  The evidence is viewed "in the light most favorable to the non-moving party" and "all reasonable inferences" are drawn in his favor.  <u>Ahmed v.</u>

<u>Johnson</u>, 752 F.3d 490, 495 (1st Cir. 2014).  In reviewing a
summary judgment motion, a court may examine "all of the record
materials on file," <u>Hicks v. Johnson</u>, 755 F.3d 738, 743 (1st Cir.
2014), including documents, "affidavits or declarations."
Fed.R.Civ.P. 56(c)(1); <u>see</u> <u>Ahmed v. Johnson</u>, 752 F.3d at 495.
"Unsupported allegations and speculation," however, "do not
demonstrate either entitlement to summary judgment or the
existence of a genuine issue of material fact sufficient to
defeat summary judgment."  <u>Rivera-Colón v. Mills</u>, 635 F.3d 9, 12
(1st Cir. 2011); <u>see</u> <u>Serra v. Quantum Servicing, Corp.</u>, 747 F.3d
37, 39-40 (1st Cir. 2014) ("allegations of a merely speculative
or conclusory nature are rightly disregarded").

In the event a complaint is verified and signed under the
pains and penalties of perjury, it is appropriate to consider
factual averments based on personal knowledge therein as the
equivalent of an affidavit for purposes of summary judgment.
<u>Sheinkopf v. Stone</u>, 927 F.2d 1259, 1262-63 (1st Cir. 1991); <u>See</u>
<u>Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit</u>
<u>International, Inc.</u>, 982 F.2d 686, 689 (1st Cir. 1993) (noting
that pursuant to 28 U.S.C. § 1746 "an unsworn statement signed
under penalty of perjury may be used, in lieu of a sworn
statement or affidavit, to support or oppose a motion for
summary judgment").  Here, however, plaintiff simply labels the
amended complaint as "verified" without signing the pleading

under the pains or penalties of perjury or otherwise properly swearing to the veracity of the facts therein.   Accordingly, it does not function as the equivalent of an affidavit for purposes of summary judgment.

Defendants, however, seek to use certain statements of fact made by plaintiff in the amended complaint as part of the summary judgment record.   Clear and unambiguous allegations in a complaint may be treated as admissions by a party for purposes of summary judgment.   See Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc., 976 F.2d 58, 61 (1st Cir. 1992); see also Pruco Life Ins. Co. v. Wilmington Trust Co., 721 F.3d 1, 11 (1st Cir. 2013); see, e.g., Isquith v. Middle South Utilities, Inc., 847 F.2d 186, 195 (5th Cir. 1988) (factual allegations in complaint may be treated as admissions or stipulations for purposes of resolving summary judgment motion).

## FACTUAL BACKGROUND

On September 14, 2012, plaintiff was arrested for drinking alcoholic beverages in public, carrying a dangerous weapon, disturbing the peace, threats and resisting arrest.   (Docket Entry # 112-1, p. 17).   Lewis, the first officer on the scene, could smell alcohol coming from plaintiff's breath.   (Docket Entry # 112-1, p. 16).   After advising plaintiff to leave the area, Lewis then observed plaintiff "yelling and swearing at the public."   (Docket Entry # 112-1, p. 16).   After again advising

plaintiff to leave the area, Lewis saw plaintiff "consuming Vodka." (Docket Entry # 112-1, p. 16). While attempting to place plaintiff in handcuffs, Lewis witnessed plaintiff "move his hands away making it difficult for the officer to place him in custody." (Docket Entry # 112-1, p. 16).

During plaintiff's arrest, an argument ensued between plaintiff and Lewis. (Docket Entry # 108, p. 2, ¶ 1, sent. 2). Smith, Kraft, O'Brien, Cepeda and Maldonado, who had also arrived on scene, heard the argument and took offense. (Docket Entry # 108, p. 2, ¶ 2). While attempting to place plaintiff in a police wagon, the officers observed him "being very abusive, flaying his arms, intentionally sitting on the ground instead of walking, kicking the wagon doors, spitting, swearing at the officers and refusing to cooperate with verbal commands." (Docket Entry # 112-1, p. 17).

Plaintiff was "aggressively banged into the truck a few times . . . by Smith and or Kraft and Lewis." (Docket Entry # 108, p. 2, ¶ 3). In transit, the van was driven "sporadically . . . causing Spencer to go bouncing around in the back of the truck." (Docket Entry # 108, p. 2, ¶ 4). Once at the police station, Smith and Kraft pulled on plaintiff's leg chains. (Docket Entry # 108, p. 2, ¶ 5). Additionally, the officers recovered a "large red knife from [plaintiff's] front right pocket." (Docket Entry # 112-1, p. 17).

A number of officers used force against plaintiff after his arrest while he was in a cell. (Docket Entry # 108, pp. 2-3, ¶ 6). Plaintiff's wrists were bleeding as a result of the handcuffs being too tight. (Docket Entry # 94, p. 2, ¶ 3, sent. 2). The officers denied plaintiff medical treatment for his head, back and wrist injuries. (Docket Entry # 94, p. 2, ¶ 3, sent. 1). During his deposition, plaintiff acknowledged that he does not specifically recall asking for medical treatment, but explained that his need for medical treatment should have been obvious. (Docket Entry # 94-2, p. 3). Plaintiff believes that he asked the booking officer for medical treatment, but again has no specific memory of doing so. (Docket Entry # 94-2, p. 3). Plaintiff also could not recall what exactly he would have required medical treatment for. (Docket Entry # 94-2, p. 3). In his booking photo, plaintiff has no visible injuries. (Docket Entry # 94-3). The booking officer, Vincent Cullen, also noted that plaintiff had no visible injuries. (Docket Entry # 94-3, p. 1).

On September 18, 2012, plaintiff was charged with drinking in public, threats and resisting arrest. (Docket Entry # 94, p. 2, ¶ 1, sent. 1). Plaintiff plead guilty to the charges. (Docket Entry # 94, p. 2, ¶ 2). During his deposition, plaintiff acknowledged that he had "plead guilty" at the Roxbury

District Court because he wanted to "get away from that crazy woman and crazy Judge." (Docket Entry 94-2, p. 2).

At his deposition, plaintiff was asked if he had any drugs or alcohol on the day of his arrest and responded, "I don't believe so." (Docket Entry # 108-2, pp. 1-2). Again, plaintiff was asked if he had been drinking on the day of his arrest and answered, "I wasn't drinking." (Docket Entry # 108-2, p. 3). Additionally, when asked at his deposition if he was mentally disturbed or under the influence of alcohol or drugs on the day of his arrest plaintiff stated, "I don't think so." (Docket Entry # 108-2, p. 4). The City has a policy that outlines the duties and responsibilities of officers on how to appropriately deal with detainees who are under the influence of drugs or alcohol or suffer from mental illness. (Docket Entry # 108-3, pp. 19-20).

Plaintiff's medical records indicate a long history of substance abuse, specifically heavy cocaine use. (Docket Entry # 112-1, p. 47). In 2011, plaintiff was hospitalized at Bridgewater State Hospital where he was diagnosed with bipolar disorder. (Docket Entry # 112-1, p. 47). On October 7, 2011, plaintiff complained to his physician that there was an "'argument in my head all the time.'" (Docket Entry # 112-1, p. 47). On October 13, 2011, plaintiff again reported "on-going racing thoughts, [and] internal dialogue" to his physician.

(Docket Entry # 112-1, p. 45).  Additionally, plaintiff reported experiencing lower back pain which he felt was caused by "spending a lot of time sitting around the home."  (Docket Entry # 112-1, p. 45).  On November 10, 2011, plaintiff reported to his physician that his mood was "more stable," he had "[l]ess racing thoughts" and "[l]ess desire to use."  (Docket Entry # 112-1, p. 43).

On March 13, 2012, plaintiff's medical records indicate that he had stopped taking his psychiatric medication for at least the past two months and had started drinking and using cocaine again.  (Docket Entry # 112-1, p. 35).  On April 12, 2012, plaintiff again visited his physician and reported knee pain which was brought on by prolonged sitting and prolonged standing.  (Docket Entry # 112-1, p. 31).  Plaintiff also reported "trauma several years ago."  (Docket Entry # 112-1, p. 31).

On March 28, 2013, following his arrest, plaintiff again visited his physician and complained of daily throbbing headaches which were the result of "head trauma when he was arrested."  (Docket Entry # 112-1, p. 26).  Additionally, plaintiff again complained of low back pain.  (Docket Entry # 112-1, p. 26).  On April 29, 2013, plaintiff indicated to his physician that these headaches were still occurring and that his back pain had not improved.  (Docket Entry # 112-1, p. 24).

Plaintiff again visited his doctor on May 23, 2013, where he reported that he hurt his lower back at work as a result of "sudden movement." (Docket Entry # 112-1, p. 21).  At this time, plaintiff indicated that the last time he had used drugs was "'a while ago.'" (Docket Entry # 112-1, p. 21).

DISCUSSION

I.   City's Motion for Summary Judgment

    The City contends that the negligence claim is subject to summary judgment because the City is exempt from liability under the MTCA in accordance with section 10(b). (Docket Entry # 108, p. 6).  In the alternative, the City submits that plaintiff has no standing to pursue a negligence claim against the City for the failure to train officers on how to properly deal with people under the influence of alcohol or drugs or people suffering from mental illness because plaintiff denied that he fit into any of those categories at the time of the incident. (Docket Entry # 107).

    Chapter 258, also known as the Massachusetts Tort Claims Act, "provide[s] 'a comprehensive and uniform regime of tort liability for public employers.'" Morrissey v. New England Deaconess Association-Abundant Life Communities, Inc., 940 N.E.2d 391, 399 (Mass. 2010).  The statute is liberally construed, id. at 401, and waives the sovereign immunity of the Commonwealth and its municipalities by allowing suits against a

public employer "based on the negligent or wrongful conduct of public employees who acted within the scope of their employment."  Martini v. City of Pittsfield, 2015 WL 1476768, at *9 (D.Mass. March 31, 2015); see Daveiga v. Boston Public Health Commission, 869 N.E.2d 586, 589 (Mass. 2007) (chapter "258 replaced the common-law scheme by which the Commonwealth and its municipalities enjoyed immunity from suit for tortious wrongdoing, subject only to miscellaneous exceptions").

Section 10(b) excludes "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his . . . employment, whether or not the discretion involved is abused" from liability under the MTCA.  Mass. Gen. Laws ch. 258, § 10(b).  The SJC adheres to "a two step analysis for application of the discretionary function exception: (1) whether the governmental actor had any discretion at all as to what course of conduct to follow, and, if so, (2) whether the discretion that the actor had is that kind of discretion for which § 10(b) provides immunity from liability."  Crete v. City of Lowell, 418 F.3d 54, 60 (1st Cir. 2005) (citing Greenwood v. Town of Easton, 828 N.E.2d 945, 948 (Mass. 2005)).  "If the defendant had no discretion because a course of action was prescribed by a statute, regulation or established agency practice, then the

discretionary function rule does not apply." Ku v. Town of Framingham, 816 N.E.2d 170, 175 (Mass. 2004).

In regard to the second step of this analysis, "[d]iscretionary actions and decisions that warrant immunity must be based on considerations of public policy." Harry Stoller and Co., Inc. v. City of Lowell, 587 N.E.2d 780, 784 (Mass. 1992). Accordingly, courts must determine whether the conduct that caused the injury has a "'high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning,' as opposed to conduct that consists of 'the carrying out of previously established policies or plans.'" Ku v. Town of Framingham, 816 N.E.2d at 175 (quoting Whitney v. City of Worcester, 366 N.E.2d 1210 (Mass. 1977)).

In the case at bar, the City has discretion regarding how to train its officers on dealing with persons under the influence of drugs or alcohol or suffering from mental illness. The City has a policy that outlines the responsibilities and duties of an officer when taking an individual under the influence of drugs or alcohol or suffering from mental illness into protective custody. (Docket Entry # 108-3, pp. 19-20). The policy leaves ample room for officers to exercise their discretion when confronting the varying circumstances involved in taking an intoxicated individual into protective custody and

determining the appropriate course of action.  Such discretionary decisions made in accordance with the broader policy implicate public policy considerations.  The City is therefore immune from a negligence claim regarding its training policy under the section 10(b) exception because the creation and implementation of this policy was a discretionary function. Therefore, summary judgment is appropriate on the negligence claim against the City.

II.  <u>Officers' Motions for Partial Summary Judgment</u>

A.  <u>False Arrest and Malicious Prosecution</u>

Defendant officers initially move for summary judgment on the claims of false arrest and malicious prosecution.  As to both claims, they argue there was probable cause to arrest plaintiff as evidenced by plaintiff's guilty plea.  (Docket Entry # 94, p. 4).

The elements of a false arrest are "that:  (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the defendant had no privilege to cause the confinement."  <u>Calero-Colon v. Betancourt-Lebron</u>, 68 F.3d 1, 3 n.6 (1st Cir. 1995) (citing <u>Restatement (Second) Of Torts</u> §§ 35, 118 cmt. b (1965), and further noting that "[n]either actual malice nor lack of probable cause is an element of false arrest").  Unlike a

section 1983 claim, the defendant in a false arrest claim based upon a warrantless arrest bears the burden of proving the presence of probable cause to justify the arrest.  <u>Gutierrez v. Massachusetts Bay Transportation Authority</u>, 772 N.E.2d 552, 564 (Mass. 2002).  It is well established that in order succeed on a false arrest claim, "plaintiff must show at minimum that the arresting officers acted without probable cause."  <u>Mann v. Cannon</u>, 731 F.2d 54, 62 (1st Cir. 1984).  It is also true that the "existence of probable cause to make an arrest is a defense to claims of false arrest or imprisonment."  <u>Philbrook v. Perrigo</u>, 637 F.Supp.2d 48, 53 (D.Mass. 2009).  "'Probable cause to arrest exists when, at the moment of arrest, the facts and circumstances known to the police officers were sufficient to warrant a person of reasonable caution in believing that the defendant had committed or was committing a crime.'"  <u>Jenkins v. Chief Justice of the District Court Department</u>, 619 N.E.2d 324, 337 (Mass. 1993).

In order to succeed on a malicious prosecution claim, plaintiff must establish the following elements:  "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice."  <u>Nieves v. McSweeney</u>, 241 F.3d 46, 53 (1st Cir. 2001).

It is well established that after a defendant has entered a guilty plea, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973).  Similarly, "It is clear that a plea of guilty to an indictment is an admission of guilt and a waiver of all non-jurisdictional defects." Acevedo-Ramos v. United States, 961 F.2d 305, 308 (1st Cir. 1992).

In the case at bar, plaintiff did in fact plead guilty to the charges against him.  (Docket Entry # 94, p. 2, ¶ 2). During his deposition, plaintiff acknowledged that he had "plead guilty" in Roxbury District Court because he wanted to "get away from that crazy woman and crazy Judge."  (Docket Entry 94-2, p. 2).  In light of plaintiff's guilty plea, plaintiff cannot show that probable cause did not exist for his arrest.  As a result of the guilty plea, the false arrest and malicious prosecution claims fail.  See Felix v. Lugas, 2004 WL 1775996, at *2 n.6 (D.Mass. March 2, 2004) (claims for false arrest and malicious prosecution were void of merit because plaintiff plead guilty to charges against him).  Furthermore, the malicious prosecution claim also fails because plaintiff cannot satisfy the second element of a malicious prosecution claim by proving that the proceeding terminated in his favor.  Plaintiff plead guilty to the charges against him, therefore, the action did not terminate

in his favor.  See Yacubian v. United States, 750 F.3d 100, 109
(1st Cir. 2014), cert. denied, 135 S.Ct. 1915 (2015).  Therefore,
summary judgment is appropriate on plaintiff's claims of false
arrest and malicious prosecution.

B.  Medical Treatment Claims

      Defendant officers next contend that the failure to provide
or inadequate medical treatment claims under section 1983 and
the MCRA are subject to summary judgment.  (Docket Entry # 94,
p. 7).  They also argue that the MTCA precludes any negligent
failure to provide medical care claim against them.  (Docket
Entry # 94, p. 7).

      With respect to the section 1983 claim, constitutional
violations based on denied or inadequate medical care brought by
pretrial detainees are analyzed under the substantive component
of the Due Process Clause of the Fourteenth Amendment.  See
O'Connor v. Huard, 117 F.3d 12, 15 (1st Cir. 1997).  The standard
applied to pretrial detainees under the Fourteenth Amendment is
nevertheless "'the same as the Eighth Amendment standard
governing the claims of convicted inmates.'"  Leavitt v.
Correctional Medical Services, Inc., 645 F.3d 484, 497 n.21 (1st
Cir. 2011) (quoting Ruiz-Rosa v. Rullan, 485 F.3d 150, 155 (1st
Cir. 2007)) (internal brackets omitted); Burrell v. Hampshire
County, 307 F.3d 1, 7 (1st Cir. 2002).  The Due Process Clause of
the Fourteenth Amendment "require[s] the responsible . . .

governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983).  The boundaries of this duty have not been plotted exactly; however, "it is clear that they extend at least as far as the protection that the Eighth Amendment gives to a convicted prisoner." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990).

In order to succeed in an Eighth Amendment claim based on denied or inadequate medical care, a prisoner must satisfy: "(1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014), cert. denied, 134 S.Ct. 2059 (2015); see Leavitt v. Correctional Medical Services, Inc., 645 F.3d at 497.  Under the first prong, plaintiff must show inter alia "that the deprivation alleged was 'objectively, sufficiently serious.'" Leavitt v. Correctional Medical Services, Inc., 645 F.3d at 497 (quoting Burrell v. Hampshire County, 307 F.3d at 8).  "'A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Leavitt v. Correctional Medical Services, Inc., 645 F.3d at 497

(quoting <u>Gaudreault v. Municipality of Salem, Mass.</u>, 923 F.2d at 208).

With respect to the second prong, "[d]eliberate indifference means that 'a prison official subjectively "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."'" <u>Ruiz-Rosa v. Rullan</u>, 485 F.3d at 156; <u>accord</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Negligent care or "even malpractice does not give rise to a constitutional claim, rather, the treatment provided must have been so inadequate as 'to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind."'" <u>Leavitt v. Correctional Medical Services, Inc.</u>, 645 F.3d at 497 (internal citations omitted); <u>see</u> <u>also</u> <u>Kosilek v. Spencer</u>, 774 F.3d at 87 n.9 ("medical imprudence—without more—is insufficient to establish an Eighth Amendment violation").

A prison official is not deliberately indifferent if he responds "reasonably to the risk." <u>Burrell v. Hampshire County</u>, 307 F.3d at 8 (internal citation omitted). A disagreement about an appropriate course of treatment therefore does not amount to deliberate indifference. <u>See</u> <u>Feeney v. Correctional Medical Services, Inc.</u>, 464 F.3d 158, 162 (1st Cir. 2006) ("when a plaintiff's 'allegations simply reflect a disagreement on the appropriate course of treatment, such a dispute with an exercise

of professional judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation'") (internal brackets omitted).  Hence, courts consistently refuse "'to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment, or to conclude that simple medical malpractice rises to the level of cruel and unusual punishment.'"  Kosilek v. Spencer, 774 F.3d at 83 (quoting Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993), in parenthetical).  Conversely, deliberate indifference may exist "'by the denial of needed care as punishment and by decisions about medical care made recklessly with "actual knowledge of impending harm, easily preventable."'"  Leavitt v. Correctional Medical Services, Inc., 645 F.3d at 497 (quoting Ruiz–Rosa v. Rullan, 485 F.3d at 156).

It is well established that even if a post-arrest detainee's injuries are visible, they are not automatically serious.  See Gaudreault v. Municipality of Salem, Mass., 923 F.2d at 208 ("While Gaudreault's injuries may have been 'obvious' in the sense that his bruises and abrasions were visible, the medical record demonstrates that he did not display any *needs* so patent as to make lay persons such as Officer Tucker, Captain Wrigley or Lieutenant Oulette remiss in failing to arrange for immediate medical attention").  As noted in

<u>Gaudreault</u>, "The doctors and nurses who examined Gaudreault on the morning after his arrest, in short, found him bruised but unbroken, requiring no more medical care than a sling, an eye-patch and the application of some disinfectant.  If that was all the medical professionals could find to treat, we do not think that Gaudreault's jailers could be required to see more."  <u>Id.</u>

In the case at bar, plaintiff does not specifically recall asking for medical treatment.  (Docket Entry # 94-2, p. 3).  Similarly, at his deposition, plaintiff did not recall what exactly he would have required medical treatment for.  (Docket Entry # 94-2, p. 3).  Plaintiff believes that he asked the booking officer for medical treatment, but has no specific memory of doing so.  (Docket Entry # 94-2, p. 3).  He does say, however, that his need for medical attention should have been obvious.  (Docket Entry # 94-2, p. 3).  In his booking photos, plaintiff has no visible injuries.  (Docket Entry # 94-3).  Additionally, the booking officer, Vincent Cullen, noted that plaintiff had no visible injuries.  (Docket Entry # 94-3, p. 1).  The only physically visible injury that plaintiff alleges is that his wrists were bleeding as a result of the handcuffs being too tight.  (Docket Entry # 94, p. 2, ¶ 3, sent. 2).  Plaintiff has not produced any medical records pertaining to his wrist injuries.

In short, plaintiff fails to provide any medical records to show that he required any medical treatment pertaining to his bleeding wrists.  He also failed to bring the non-serious injuries to the attention of any of the defendant officers. There is therefore a dearth of evidence that plaintiff's injuries were serious or that defendant officers deliberately ignored them.  Summary judgment on the section 1983 denied or inadequate medical care claim is therefore proper.

The MCRA claim based on denied or inadequate medical care fails for the same reasons the section 1983 claim fails.  As explained by the Massachusetts Supreme Judicial Court in Batchelder, "the Legislature intended to provide a remedy under G.L. 823 c. 12, § 11I, coextensive with 42 U.S.C. § 1983, except that the Federal statute requires State action whereas its State counterpart does not."  Batchelder v. Allied Stores Corp., 473 N.E.2d 1128, 1131 (Mass. 1985); see, e.g., Garcia v. City of Boston, 115 F.Supp.2d 74, 84 (D.Mass. 2000) (quoting Batchelder, 473 N.E.2d at 1131, and dismissing "Garcia's claims under the Massachusetts Civil Rights Act fail for the reasons specified above with regard to his claims under 42 U.S.C. § 1983").[4]

---

[4]  The MCRA claim also requires the existence of threats, intimidation or coercion or attempted interference by threats, intimidation or coercion with a plaintiff's exercise of rights under the Massachusetts constitution.  Mass. Gen. Laws ch. 12, § 11H.

Summary judgment is therein appropriate on the denial of a failure to provide medical care under the MCRA.

Defendant officers next argue they are immune from any state law negligence claim under the MTCA.  Assuming dubitante for purposes of argument that the amended complaint raises a negligence claim, defendant officers are correct.

As previously explained, the MTCA "provide[s] 'a comprehensive and uniform regime of tort liability for public employers.'"  Morrissey v. New England Deaconess Association-Abundant Life Communities, Inc., 940 N.E.2d at 399.  It is also well established that the MTCA "categorically protects public employees acting within the scope of their employment from liability for 'personal injury or death' caused by their individual negligence."  Canales v. Gatzunis, 979 F.Supp.2d 164, 175 (D.Mass. 2013); see also Maraj v. Massachusetts, 836 F.Supp.2d 17, 31 (D.Mass. 2011); Martinez v. Wolferseder, 997 F.Supp 192, 195 (D.Mass. 1998).

Here, there is no allegation or evidence in the record alleging that any of the defendant officers were not public employees acting within the scope of their duties at the time of the alleged negligence.  Accordingly, as public employees acting within the scope of their duties, defendant officers are immune from individual liability for any denied or inadequate medical treatment claim that is grounded in negligence.  Summary

judgment is therefore appropriate regarding a negligent failure to provide or inadequate medical treatment claim.

C.  Conspiracy

Defendant officers next argue that the conspiracy claim is subject to summary judgment because plaintiff offers only speculation and conclusory allegations to support the claim. (Docket Entry # 94, p. 10).  Civil rights conspiracies may arise under either section 1983 or section 1985(3).  It is unclear which type of conspiracy plaintiff asserts.

A conspiracy under section 1983 is "commonly defined" as "'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principle element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.'"  Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2009).  To successfully plead a section 1983 conspiracy, a plaintiff must show both a conspiratorial agreement and an abridgement of a federally secured right.  Nieves v. McSweeney, 241 F.3d at 53; Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988).  Additionally, plaintiff bears the burden of identifying the specific constitutional right infringed.  Nieves v. McSweeney, 241 F.3d at 53.

Section 1985(3) creates a private right of action for

"'injuries occasioned when "two or more persons . . . conspire .

. . for the purposes of depriving, either directly or

indirectly, any person or class of persons of the equal

protection of the laws, or of equal privileges and immunities

under the laws."'" Diva's Inc. v. City of Bangor, 411 F.3d 30,

38 (1st Cir. 2005) (quoting Burns v. State Police Association of

Massachusetts, 230 F.3d 8, 12 n.3 (1st Cir. 2000)).  A claim

under section 1985(3) has four elements:  (1) a conspiracy; (2)

a conspiratorial purpose to deprive plaintiff of the equal

protection of the laws; (3) an overt act in furtherance of the

conspiracy; and (4) personal injury, injury to property or a

deprivation of a constitutionally protected right.  Soto-Padró

v. Public Buildings Authority, 675 F.3d 1, 4 (1st Cir. 2012).  A

"conspiratorial purpose" requires a racial or class-based animus

behind the conspirators' actions.  Pérez-Sánchez v. Public

Building Authority, 531 F.3d 104, 107 (1st Cir. 2008).

Here, the record contains only two references to a

conspiracy and these references are made in a conclusory manner.

When asked at his deposition how defendant officers conspired

against him, plaintiff stated, "All of them down [sic] with the

same objective, retaliation.  You're going to threaten one of

ours?  We're going to teach you a lesson.  I mean, hey, it

doesn't take a rocket scientist to believe that."  (Docket Entry

# 94-2, p. 6).  Later in his deposition, plaintiff added, "I believe they all conspired in different ways, in different times, and they jointly and separately helped each other to further that conspiracy to assault me and do whatever they wanted to do to me and deny me my rights of being booked or denied me my rights of a phone call or medical treatment or anything else."  (Docket Entry # 94-2, p. 10).

As to the section 1983 claim, the record is devoid of facts which point to either a conspiratorial agreement or an abridgment of a federally secured right.  Similarly, the record contains no facts pertaining to the last three elements of a section 1985(3) claim.  It is well established that although conspiracy claims often rest on inferences, "summary judgment may still be appropriate on a conspiracy claim where the nonmoving party rests merely on conclusory allegations" to support his theory.  Estate of Bennett v. Wainwright, 548 F.3d at 178.  Here, plaintiff offers only speculation and conclusory allegations to support the conspiracy claim.  Plaintiff has presented no evidence, either direct or circumstantial, of an agreement among defendant officers from which a reasonable jury could infer a conspiracy among them to inflict harm upon plaintiff.  Summary judgment on the section 1983 and section 1985(3) conspiracy claims is therefore warranted.

## CONCLUSION

In accordance with the foregoing discussion, the City's motion for summary judgment (Docket Entry # 107) is **ALLOWED** as to the claim brought against them under the MTCA.  The partial motions for summary judgment brought by defendant officers (Docket Entry ## 93, 95, 97, 99, 101, 103, 105) are **ALLOWED** as to the false arrest, malicious prosecution and the conspiracy claims as well as the denial of and inadequate medical care claims under section 1983 and the MTCA.  The remaining claims consist of the assault and battery claim and the excessive force claim against defendant officers.  The deadline to file dispositive motions has passed and there will be no extension of the deadline in this 2013 case.  This court will conduct a status conference on December 3, 2015 at 2:45 p.m. to set a trial date.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge